IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SONYA W.,<br><br>             Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY, Commissioner of Social Security,<br><br>             Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 4:23-cv-00094-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Sonya W.'s appeal from the decision of the Social Security Administration denying her application for supplemental security income.[1] The Court AFFIRMS the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 15.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

1

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.  PROCEDURAL HISTORY

On March 23, 2021, Plaintiff filed an application for supplemental security income, alleging disability due to torn tendons in left knee, left knee giving out, memory loss, high blood pressure, anxiety, dysphagia, and balance problems.[8] The claims were denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ.[10] A hearing was held on April 7, 2023.[11] On May 3, 2023, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied review on September 18, 2023,[13] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[14]

On October 18, 2023, Plaintiff filed her complaint in this case.[15] On October 20, 2023, both parties consented to a United States Magistrate Judge conducting all proceedings in the case,

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 49–51, 177-79, 188, 249–50.

[9] *Id*. at 57-58.

[10] *Id*. at 84-86.

[11] *Id.* at 37-48.

[12] *Id.* at 11-36.

[13] *Id.* at 1-6.

[14] 20 C.F.R. §§ 416.1481, 422.210(a).

[15] Docket No. 1.

including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[16] The Commissioner filed an answer and the administrative record on January 18, 2024.[17]

Plaintiff filed her Opening Brief on February 20, 2024.[18] The Commissioner's Answer Brief was filed on May 17, 2024.[19] Plaintiff filed her Reply Brief on June 5, 2024.[20]

B.  MEDICAL EVIDENCE

Plaintiff sought supplemental security income based on torn tendons in left knee, left knee giving out, memory loss, high blood pressure, anxiety, dysphagia, balance problems, and tremors.[21] In September 2006, Dr. Lunke opined that Plaintiff was disabled and would need ligament reconstruction surgery to stabilize her left knee.[22] She underwent surgery in approximately 2014.[23]

Plaintiff reported that her general weakness and balance problems began in 2019.[24] Plaintiff reported a history of imbalance and hand tremors in 2020 when she was hospitalized after falling and hitting her head.[25] She allegedly had two falls with head injuries in 2021.[26] Several

---

[16] Docket No. 7.

[17] Docket No. 13.

[18] Docket No. 15.

[19] Docket No. 21.

[20] Docket No. 23.

[21] R. at 49–51, 188, 249–50.

[22] *Id*. at 264.

[23] *Id*. at 346, 354, 495, 535.

[24] *Id*. at 534–35, 627.

[25] *Id*. at 253, 255, 334, 336, 349, 354, 357–58, 379–80, 386, 429, 443, 447, 450–51, 495, 501, 513, 535.

[26] *Id*. at 535, 609.

providers noted that Plaintiff struggled to ambulate on her own.[27] However, no abnormalities or reasons for balance problems were ever noted on imaging.[28]

In January 2021, Plaintiff was seen for general weakness/nervous system tremors and was referred to neurology.[29] Interestingly, the provider indicated that physical exam showed "no tremors noted to outstretched hands."[30] Plaintiff characterized the tremors as moderate in severity and persistent but admitted she had never been seen by a neurologist for these symptoms.[31]

In February 2021, Plaintiff completed a Medicaid Disability Addendum where she indicated she could not walk by herself, and she stopped working in 2019.[32] Plaintiff indicated that she could vacuum once a month, see friends once a week, and watch TV daily.[33]

DPT Armstrong noted in April 2021 that Plaintiff's fear of falling was "much more significant and inconsistent with her current level of balance."[34] Although follow-up physical therapy appointments were recommended, Plaintiff only returned for a short time.[35] Plaintiff reported that physical therapy was helping and she was able to ambulate without an assistive device; she had to stop attending when her insurance coverage ran out.[36]

---

[27] *Id*. at 272, 333–34, 349, 357, 380–82, 451, 495, 497, 503, 505, 509, 519, 527, 534, 536–37, 567, 573–74, 591, 595, 627, 731, 741.

[28] *Id*. at 257, 260, 272, 338, 341, 357–58, 380, 444, 495, 501, 535.

[29] *Id*. at 271–72, 332–33, 537.

[30] *Id*. at 272, 333.

[31] *Id*. at 447.

[32] *Id*. at 274.

[33] *Id*. at 276.

[34] *Id*. at 382.

[35] *Id*. at 383, 429, 510, 537.

[36] *Id*. at 535.

In May 2021, Dr. Wallin indicated that despite Plaintiff's reported imbalance, she had not suffered any falls,[37] and that her chronic condition "is stable."[38] In June 2021, Plaintiff reported cooking, shopping, and driving despite having some walking instability.[39] When seen in August 2021, Plaintiff's provider noted that Plaintiff exhibited stable gait and showed no motor or sensory deficits when moving her extremities.[40]

In January 2022, Plaintiff reported needing constant assistance with walking,[41] but she also indicated her "legs work fine" and she can utilize stairs by holding on to the banister.[42] During this time, Dr. Paney examined Plaintiff and opined that she exhibited difficulty with balance with unknown etiology or triggering event.[43] Dr. Paney described Plaintiff's symptoms as sudden but noted that the severity had decreased over time.[44] Dr. Dart also examined Plaintiff in January 2022. He noted that despite Plaintiff's claimed balance issues, she did not exhibit signs of tremors,[45] and she "[a]rose spontaneously and unaided from a seated position[, d]id not appear uncomfortable getting on and off the examination table and mobilized unaided throughout the exam with adequate effort and no distinct inconsistencies."[46] Plaintiff was unable to heel and toe walk symmetrically,

---

[37] *Id*. at 401.
[38] *Id*. at 403.
[39] *Id*. at 280, 285.
[40] *Id*. at 388.
[41] *Id*. at 496.
[42] *Id*.
[43] *Id*. at 498.
[44] *Id*.
[45] *Id*. at 504.
[46] *Id*. 501–02.

her gait was slow, and she was unable to walk without the assistance of a walker.[47] Dr. Dart concluded that the physical exam was consistent with Plaintiff's claimed unsteadiness on her feet.[48]

In March 2022, Plaintiff reported meeting with a physical therapist and doing some balance training with them without sufficient help.[49] She has a hard time standing for long periods even with help.[50]

In April 2022, Plaintiff reported to DPT Ivory for a functional capacity evaluation ("FCE").[51] DPT Ivory noted Plaintiff's antalgic gait.[52] Plaintiff had been using a four-wheel walker in open spaces and out in public for the last month.[53] Plaintiff demonstrated high fear avoidance behaviors related to falls risk.[54] DPT Ivory concluded that Plaintiff was a medium to high fall risk patient.[55] DPT Ivory opined that Plaintiff could stand independently using her hands, could stand for 30 seconds without support, could sit for two minutes under supervision, could stand with her eyes closed for 10 seconds with supervision, could not stand with her feet together for 30 seconds, could not retrieve an object from the floor without assistance, could turn to look behind herself only with supervision, could stand with one foot in front for 30 seconds, and could

---

[47] *Id.* at 503.
[48] *Id.* at 504.
[49] *Id.* at 595.
[50] *Id.*
[51] *Id.* at 534, 608.
[52] *Id.* at 541.
[53] *Id.* at 608.
[54] *Id.* at 538, 610.
[55] *Id.* at 544–45.

6

not stand on one foot without assistance.[56] Plaintiff was able to rise from a chair after more than one attempt, was immediately steady after standing but used walker or other support, was steady while standing in a wide stance and using support, began to fall when nudged, was unsteady with her eyes closed, was unsteady when turning in a circle, was able to sit down using her arms, was hesitant to start walking and stopped between steps, and bent her knees or spread her arms while walking to support herself.[57] Plaintiff could not lift any objects from floor to waist, knee to waist, or waist to shoulder height.[58] She could sit for at least 49 minutes at a time and stand for at least two minutes.[59] Plaintiff was able to do a walking test where she walked 445.5 feet in six minutes but she required one seated rest break for three and a half minutes after continuous ambulation with minimal assistance.[60]

In May 2022, Plaintiff was seen by PA-C McBride for tremors, poor balance, and being at risk for falls.[61] Plaintiff's prognosis was fair to poor based on the findings in the FCE.[62] PA-C McBride prescribed a walker with a seat.[63] In August 2022, Plaintiff was still unable to balance without the walker.[64]

---

[56] *Id*. at 544.
[57] *Id*. at 545.
[58] *Id*. at 610.
[59] *Id*.
[60] *Id*.
[61] *Id*. at 588.
[62] *Id*. at 598.
[63] *Id*. at 600.
[64] *Id*. at 659.

In November 2022, Plaintiff reported feeling stronger after attending some physical therapy appointments.[65] In 2023, Plaintiff was still struggling with weakness and imbalance and used a walker for mobility.[66]

In addition to Plaintiff's physical balance and tremor issues, she also suffered from dysphagia beginning in approximately February 2021. Plaintiff underwent an esophagram on February 24, 2021, due to concerns with swallowing solids.[67] Doctors performed an upper endoscopy (EGD) in March 2021, as Plaintiff was exhibiting continued symptoms of dysphagia and difficulty swallowing.[68] In August 2021, Plaintiff presented with complaints of nausea and vomiting.[69] The provider indicated that these symptoms were likely linked to alcohol withdrawal.[70]

In May 2022, Plaintiff reported to the emergency room for nausea and vomiting symptoms that had been ongoing for approximately two months.[71] An ultrasound showed gallbladder sludge and gallstones, so the gallbladder was ultimately removed.[72] In July 2022, Plaintiff was diagnosed with severe esophagitis and dysphagia.[73] She underwent an endoscopy because of nausea and

---

[65] *Id.* at 735–36.
[66] *Id.* at 628, 631.
[67] *Id.* at 285, 358–59, 433.
[68] *Id.* at 375–76.
[69] *Id.* at 386.
[70] *Id.*
[71] *Id.* at 702.
[72] *Id.* at 702, 705–06, 709–11, 714, 716.
[73] *Id.* at 661–62, 672–73.

vomiting.[74] Dr. Woerlein also ordered a CT scan be performed on Plaintiff's head to see if they could find the source of her vomiting.[75] In August 2022, Plaintiff was seen in the emergency room after experiencing nausea and vomiting for at least one week and was still struggling with severe esophagitis.[76] In February 2023, Plaintiff was still struggling to eat because of her esophageal dysmotility.[77]

C. HEARING TESTIMONY

At the hearing, Plaintiff testified that she worked full-time as a bookkeeper for her husband's company from June 2002 until January 2020.[78] She testified that in 2020 she began having trouble sitting at work or while driving because her leg tremors made it hard for her to keep her legs down.[79] Plaintiff estimated she spent about 90% of her time in her recliner because her leg tremors decreased when her legs were elevated.[80] Around this same time, Plaintiff began using a walker both indoors and outdoors to help with her balance.[81] In 2022, she also had issues with vomiting and swallowing, some of which symptoms were alleviated with treatment.[82]

---

[74] *Id*. at 665, 668, 670–72.
[75] *Id*. at 677.
[76] *Id*. at 740–41.
[77] *Id*. at 627, 631.
[78] *Id*. at 42.
[79] *Id*. at 42–43.
[80] *Id*. at 43–44.
[81] *Id*. at 44–45.
[82] *Id*. at 44.

Plaintiff lives with her husband.[83] She testified that she helps with chores around the house like doing the dishes and the laundry, but she requires some assistance with these tasks.[84]

The vocational expert ("VE"), Carmen Roman, testified that Plaintiff's prior work as a bookkeeper is considered sedentary as generally performed.[85] VE Roman testified that someone of Plaintiff's age, education, and work experience could perform work as a bookkeeper with the following restrictions: occasionally lift or carry up to ten pounds; frequently lift or carry five pounds; stand or walk for up to two hours in an eight-hour workday; sit for up to six hours in an eight-hour period; never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps or stairs; balance, stoop, kneel, and crouch; and occasionally be exposed to hazards.[86] However, a person with an additional limitation of occasional handling and fingering would be unable to perform work as a bookkeeper or other clerical centered jobs.[87]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 23, 2021, the application date.[88] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: arthritis and status post left knee injury.[89] At step three, the ALJ

---

[83] *Id.* at 45.
[84] *Id.* at 45–46.
[85] *Id.* at 46.
[86] *Id.* at 46–47.
[87] *Id.* at 47.
[88] *Id.* at 16.
[89] *Id.* at 16–19.

found that Plaintiff did not meet or equal a listed impairment.[90] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions.[91] At step four, the ALJ concluded that Plaintiff had past relevant work as a bookkeeper.[92] The ALJ concluded that Plaintiff's RFC did not preclude performance of those work-related activities.[93] Since the ALJ concluded that Plaintiff could perform her past relevant work, he concluded that Plaintiff was not disabled and did not reach step five.[94]

### III. DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate her severe impairments, and (2) failing to properly evaluate the medical opinion evidence.

#### A. SEVERE IMPAIRMENTS

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's dysphagia/gastrointestinal issues, tremors, and balance issues/gait instability.

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[95] A claimant must make only a de minimis showing for her claim to advance beyond step two of the

---

[90] *Id.* at 19–20.

[91] *Id.* at 20–29.

[92] *Id.* at 29–30.

[93] *Id.*

[94] *Id.* at 30.

[95] 20 C.F.R. §§ 404.1520(c), 416.920(c).

analysis.[96] However, "a showing of the mere presence of a condition is not sufficient."[97] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . . the impairments do not prevent the claimant from engaging in substantial gainful activity."[98] That is, "[i]f the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits."[99]

In this case, the ALJ considered Plaintiff's history of dysphagia, tremors, and balance issues and concluded they were not severe impairments because they presented only "a minimal limitation in [Plaintiff's] ability to perform basic work activities."[100]

Plaintiff argues the ALJ erred when he found that Plaintiff's dysphagia was resolved in March 2021. The medical records show that Plaintiff continued to have digestion difficulties as late as February 2023, when she presented to the emergency room with weeks-long history of nausea and vomiting. While the ALJ's conclusion that Plaintiff's dysphagia was no longer an issue after March 2021 is inaccurate when compared to the medical treatment notes, this error is harmless because the ALJ still considered Plaintiff's ongoing dysphagia problems in his analysis.[101] For instance, the ALJ noted Plaintiff's visit to the emergency room in July 2022, when

---

[96] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[97] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[98] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[99] *Id.*

[100] R. at 17.

[101] *Id*.

she was diagnosed with esophagitis and underwent treatment.[102] However, he concluded that this condition did not cause more than a minimal ongoing functional limitation.[103] This conclusion is supported by substantial evidence. While Plaintiff posits that her gastrointestinal issues might complicate her tremors and balance issues, the evidence does not support this.

As for Plaintiff's tremors, she asserts she suffered from "noticeable tremors in both hands" in January 2021 and was still exhibiting signs of mild tremors in February.[104] The ALJ considered her history of tremors but concluded based on the medical evidence that these issues were mild and associated with alcohol withdrawal.[105] Several treatment providers ran testing on Plaintiff in efforts to find a cause for her tremors and balance issues.[106] Despite these tests, none of the providers could determine an etiology for Plaintiff's tremors.[107] At least one provider indicated he believed Plaintiff's tremors were symptoms of alcohol withdrawal.[108]

Plaintiff also complained of balance issues. However, Plaintiff's lab and imaging results were unremarkable with no findings to support Plaintiff's claimed balance issues. Despite being referred to neurology and physical therapy several times, Plaintiff rarely, if ever, followed up with these specialists. She was also inconsistent in her use of a walker or other ambulatory assistive device. While several of Plaintiff's medical providers indicated she struggled to ambulate on her

---

[102] *Id.*
[103] *Id*.
[104] Docket No. 15, at 3.
[105] R. at 17.
[106] *Id.* at 257, 260, 272, 338, 341, 357–58, 380, 444, 495, 498, 501, 535.
[107] *Id.*
[108] *Id*. at 50, 386, 451.

13

own, none of them prescribed a walker. It wasn't until Plaintiff filed for disability that she sought out a prescription for a walker.[109]

Plaintiff's claimed balance issues are also contradicted by the medical notes in the record showing Plaintiff was able to get around her trailer without issues,[110] she could sit and stand on her own,[111] and had a normal gait.[112] For example, DPT Armstrong noted Plaintiff had good balance and that her fear of falling was inconsistent with her balance level.[113] Dr. Dart observed that Plaintiff appeared comfortable during the exam and she was able to get up and down without issue.[114] At several of her medical appointments, Plaintiff would hold on to her husband's arm, rather than an ambulatory assistive device, for some stability if needed.[115]

In addition to the medical records, Plaintiff's own testimony about her activities of daily living contradict her claim that she cannot balance or ambulate on her own. Plaintiff indicated her hobbies include walking and that she walked for exercise.[116]

To summarize, Plaintiff's impairments present a mixed bag. Some parts of the record support Plaintiff's claims that her medical impairments are severe while others do not. In her request for review, Plaintiff is essentially asking the Court to reweigh the evidence and come to a different conclusion than the ALJ. This is impermissible under the highly deferential standard of

---

[109] *Id*. at 600.

[110] *Id.* at 60, 509, 595.

[111] *Id.* at 51, 381, 383, 501–02, 544–45, 573.

[112] *Id.* at 50, 388, 545, 593.

[113] *Id.* at 382.

[114] *Id*. at 502.

[115] *Id.* at 50–51, 61, 349, 497, 534, 537, 591, 608, 611.

[116] *Id*. at 502.

judicial review, especially since the ALJ accounted for much of Plaintiff's concerns in his RFC assessment. The ALJ limited Plaintiff to sedentary work with limited standing and walking. Even with these limitations, the ALJ found that Plaintiff was capable of performing her past relevant work.

B. MEDICAL OPINION EVIDENCE

Plaintiff also argues that the ALJ erred in his evaluation of the medical opinion evidence from the consultative examiner ("CE"), Dr. Grayson Dart, and her treatment providers, DPT Courtney Ivory and PA-C Shaunna McBride.

An ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[117] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding.[118] The most important criteria for determining persuasiveness are supportability and consistency.[119]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[120] The ALJ must explain how they considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but they are generally not required to explain

---

[117] 20 C.F.R. § 404.1520c(a).

[118] *Id.* § 404.1520c(c).

[119] *Id.* § 404.1520c(a), (b)(2).

[120] *Id.* § 404.1520c(b).

how they considered other factors.[121] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[122] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[123]

Plaintiff underwent an independent medical examination by Grayson Dart, D.O., in January 2022.[124] During the examination, Dr. Dart noted that Plaintiff appeared comfortable, arose spontaneously and unaided from a seated position, was able to get on and off the examination table, and mobilized unaided throughout the exam with adequate effort and no distinct inconsistencies.[125] Dr. Dart noted largely normal range of motion and full strength in upper and lower extremities.[126] Dr. Dart opined that there was no limit in the number of hours Plaintiff could sit during a workday, that she could stand for about 2 hours, and walk for about 2 hours, though he noted abnormal gait.[127] Dr. Dart also recommended continuous use of a walker.[128]

---

[121] *Id*. § 404.1520c(b)(2).

[122] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[123] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[124] R. at 501–05.

[125] *Id*. at 502.

[126] *Id*. at 503–04.

[127] *Id*. at 504.

[128] *Id*. at 503.

The ALJ found Dr. Dart's opinions that Plaintiff required continuous use of a walker was unpersuasive.[129] While the ALJ noted that Dr. Dart's report was supported by his examination and detailed notes, he concluded that Dr. Dart's conclusion that Plaintiff required continuous use of a walker was inconsistent with the record evidence. In support, the ALJ cited much of the evidence already discussed. This evidence shows that Plaintiff complained of difficulty walking, but the exam findings, including those of Dr. Dart, were relatively normal and her complaints were inconsistent with her activities of daily living. This, accompanied by Plaintiff's inconsistent use of assistive devices, provides ample support for the ALJ's decision to conclude that Dr. Dart's recommendation was unpersuasive.

DPT Courtney Ivory evaluated Plaintiff on May 3, 2022.[130] DPT Ivory noted that Plaintiff used a walker and complained of weakness and poor balance.[131] DPT Ivory concluded that Plaintiff would not be able to safely perform a full-time job in a competitive work environment but could occasionally work in a sedentary job on a part-time basis.[132]

The ALJ found DPT Ivory's opinions unpersuasive.[133] With respect to DPT Ivory's conclusion that Plaintiff would be unable to work full-time, the ALJ correctly noted that this was a statement on issues reserved to the Commissioner, which "is inherently neither valuable nor persuasive."[134] And while the ALJ found that DPT Ivory had supported his opinions with an

---

[129] *Id*. at 27.
[130] *Id*. at 533–56.
[131] *Id*. at 534–35.
[132] *Id*. at 536.
[133] *Id*. at 28.
[134] 20 C.F.R. § 416.920b(c)(3).

17

explanation, he nevertheless concluded that they were not persuasive because they were based on a one-time evaluation and were inconsistent with the overall record. As above, the ALJ sufficiently explained why he found DPT Ivory's opinions unpersuasive using the relevant factors. Any suggestion that the ALJ should have given those opinions more weight essentially asks the Court to reweigh the evidence.

Shaunna McBride, PA-C, submitted a Treating Source Statement of Physical Limitations on May 27, 2022.[135] PA-C McBride opined that Plaintiff could stand, walk, and sit for less than 2 hours in a workday.[136] She further stated that Plaintiff would be off task 20% or more of the time, would be absent from work 4 or more days per month, and would be far less efficient than the average worker.[137]

The ALJ also found PA-C McBride's opinions unpersuasive.[138] As for supportability, the ALJ noted that PA-C McBride's opinion only included a brief explanation and was largely based on the results of DPT Ivory's one-time evaluation, which the ALJ also found unpersuasive. The ALJ also found PA-C McBride's evaluation inconsistent with the record overall, for the same reasons already discussed. Based upon this, the Court concludes that the ALJ sufficiently explained the reasons he found PA-C McBride's evaluation unpersuasive.

---

[135] R. at 565–66.

[136] *Id*. at 565.

[137] *Id*. at 566.

[138] *Id*. at 27.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court AFFIRMS the Commissioner's decision.

DATED this 26th day of July, 2024.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge